CHARLES E. CANTER (Cal. Bar No. 263197)
Email: canterc@sec.gov
SARAH S. NILSON (Cal. Bar No. 254574)
Email: nilsons@sec.gov
YOLANDA OCHOA (Cal. Bar No. 267993)
Email: ochoay@sec.gov

Attorneys for Plaintiff
Securities and Exchange Commission
Michele Wein Layne, Regional Director
Katharine Zoladz, Associate Regional Director
Gary Y. Leung, Regional Trial Counsel
444 S. Flower Street, Suite 900
Los Angeles, California 90071
Telephone: (323) 965-3998
Facsimile: (213) 443-1904

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>JONATHAN WILLIAM MIKULA, CHRISTIAN FERNANDEZ, AMIT RAJ BERI, SWAY ENERGY CORPORATION, AVTAR SINGH DHILLON, EMERALD HEALTH PHARMACEUTICALS INC., and JAMES M. DEMESA,<br><br>Defendants. | Case No.<br><br>**COMPLAINT** |

Plaintiff Securities and Exchange Commission ("SEC" or "Commission") files this complaint against Defendants Jonathan William Mikula a/k/a William Mikula ("Mikula"), Christian Fernandez a/k/a Christian Crockwell ("Fernandez"), Amit Raj Beri a/k/a Raj Beri ("Beri"), Sway Energy Corporation f/k/a Elegance Brands, Inc. ("Elegance"), Avtar Singh Dhillon, M.D. ("Dhillon"), Emerald Health Pharmaceuticals, Inc. ("Emerald Health"), and James DeMesa ("DeMesa"), and alleges:

## JURISDICTION

1.     The Court has jurisdiction over this action under Sections 20(b), 20(d)(1), and 22(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77t(b), 77t(d)(1) & 77v(a), and Sections 21(d)(1), 21(d)(3)(A), 21(e), and 27(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78u(d)(1), 78u(d)(3)(A), 78u(e) & 78aa(a).

2.     Defendants have, directly or indirectly, made use of the means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange in connection with the transactions, acts, practices and courses of business alleged in this complaint.

3.     Venue is proper in this district under Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a) and Section 27(a) of the Exchange Act, 15 U.S.C. § 78aa(a), because certain of the transactions, acts, practices and courses of conduct constituting violations of the federal securities laws occurred within this district.  In addition, venue is proper in this district because Defendant Sway Energy Corporation has its principal place of business in this district.

## SUMMARY

4.     This securities fraud enforcement action involves a scheme to conceal paid promotion for securities offerings between at least 2019 and 2021.

5.     At the center of this scheme is Defendant Mikula, a recidivist violator of the federal securities laws.  Mikula, acting with various middlemen, including

Defendants Fernandez and Beri, promoted securities offerings to subscribers of the Palm Beach Venture newsletter for which Mikula was an author and chief analyst. While Mikula's articles purported to be based on his independent analysis and claimed that no one associated with the Palm Beach Venture received compensation for the promotion, in reality Mikula secretly received compensation from the issuers of the promoted securities.

6.     Mikula carried out this scheme with respect to the securities offerings of at least four issuers: Elegance Brands, Emerald Health, Cloudastructure, Inc., and Hightimes Holding Corporation.  These four offerings were conducted (or purported to be conducted) pursuant to Regulation A ("Reg A"), which exempts certain qualified public securities offerings from the Securities Act's registration provisions.

7.     Despite claiming that the promotions were not paid for, Mikula and others acting with him received millions of dollars in compensation in exchange for promoting the issuers' Reg A offerings.  Mikula, acting with associates Fernandez and Beri, took extensive steps to deceive investors and conceal that the promotions were paid for by, among other things, arranging for the issuers to enter into sham consulting agreements, submitting false invoices for the illicit payments, and funneling payments for the promotion through multiple parties and accounts, many of which were foreign.

8.     During the period that Mikula deceptively promoted the Reg A offerings of Elegance, Emerald Health, Cloudastructure, and Hightimes, investors purchased more than $80 million in the securities of these companies.

9.     Fernandez played a central role in the promotional scheme.  Fernandez, a close associate of Mikula, was responsible for collecting and disbursing illicit funds related to the promotions.  Fernandez negotiated Mikula's share of the proceeds with issuers and/or middlemen, sent sham invoices to collect Mikula's share of the illicit proceeds, and funneled the proceeds through various entities and accounts—many of which were foreign—that he controlled.

10.     Beri served the dual role of authorizing payments for promotion as CEO of Elegance, and acting as a middleman for Mikula's promotions of Emerald Health and Hightimes.  Beri entered into a sham consulting contract with Emerald Health to collect payments in exchange for Mikula's promotion of Emerald Health, and passed approximately half of the amount collected to Fernandez for the benefit of Mikula.

11.     Two of the issuers—Defendants Elegance and Emerald Health, along with several affiliated individuals, Defendants Beri, Dhillon (Emerald Health's co-founder), and DeMesa (Emerald Health's CEO)—knew, or were reckless in not knowing, that investor funds paid for the Palm Beach Venture promotions of their Reg A offerings, thus participating in the scheme.  These issuers, acting through and with the approval and direction of Beri and DeMesa, made material misrepresentations and omissions to investors and in their filings with the Commission.

12.     In addition, Elegance and Beri offered and sold approximately $20 million in Elegance securities to investors at a time when the offering was unregistered and not subject to a valid registration exemption.  Moreover, Elegance and Beri fed false information to Mikula to use in connection with the promotion of Elegance, and made several false and misleading disclosures in filings with the Commission and communications to investors, including falsely representing that the offering was conducted under a valid Reg A exemption and falsely stating that $530,000 and 8.9 million shares of Elegance stock were provided to a third party for "marketing" and "consulting services," when in reality they were provided in exchange for Mikula's promotion.

13.     Through their conduct:  (1) Defendants violated the antifraud provisions of Section 10(b) of the Exchange Act and Rule 10b-5(a) and (c) thereunder, 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5(a) and (c), and the antifraud provisions of Sections 17(a)(1) and 17(a)(3) of the Securities Act, 15 U.S.C. § 77q(a)(1) and (3); (2) Mikula, Beri, Elegance, Emerald Health, and DeMesa violated the antifraud

provisions of Section 10(b) of the Exchange Act and Rule 10b-5(b) thereunder, 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5(b), and the antifraud provisions of Section 17(a)(2) of the Securities Act, 15 U.S.C. § 77q(a)(2); (3) Mikula violated the anti-touting provisions of Section 17(b) of the Securities Act, 15 U.S.C. § 77q(b); (4) Beri, Dhillon, and Fernandez aided and abetted Mikula's violations of Section 17(b) of the Securities Act, 15 U.S.C. § 77q(b); and (5) Beri and Elegance violated the registration provisions of Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. §§ 77e(a) & 77e(c).

14.     The SEC seeks permanent injunctions against future violations of Exchange Act Section 10(b) and Rule 10b-5 thereunder and Securities Act Sections 17(a) and 17(b) and Sections 5(a) and 5(c); an order requiring Mikula, Fernandez, and Beri, to disgorge their ill-gotten gains with prejudgment interest; civil penalties against Mikula, Fernandez, Beri, Elegance, Emerald Health, and DeMesa; an order barring Beri, Dhillon, and DeMesa from serving as an officer or director of a public company; and an order enjoining Mikula, Fernandez, and Beri from participating in any campaign to promote stock or other securities for compensation.

## THE DEFENDANTS

15.     **Jonathan William Mikula, a/k/a/ William Mikula,** is a resident of Georgia, who, from at least 2019 through late 2021, was chief analyst and author of Palm Beach Venture, a newsletter published by Palm Beach Research Group.  He currently operates his own entity, POP Finance a/k/a The Deal Report, through which he recommends securities investments.  Mikula has been twice enjoined by federal courts, including this Court, from violating the federal securities laws:  In 2007, Judge Spencer Letts permanently enjoined Mikula from future violations of Sections 5 and 17(a) of the Securities Act, 15 U.S.C. § 77e & 77q(a), and Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b) and Rule 10b-5, 17 C.F.R. §240.10b-5, and ordered Mikula to disgorge $106,671.08 in ill-gotten gains and prejudgment interest, *SEC v. Phoenixsurf.com, et al.*, Case No. 2:07-cv-04765-JSL, ECF No. 6 (C.D. Cal. Aug. 14,

2007).  The Commission ultimately waived payment of monetary relief following Mikula's submission of a sworn financial statement.  But Mikula lied on that statement and later pled guilty to providing false information to a federal agency, in violation of 18 U.S.C. § 1001, *United States v. Mikula*, Case No. 2:10-cr-00649-DSF, ECF No. 18 (C.D. Cal. Jan. 19, 2011).  In fact, Mikula lied about his receipt of funds from another securities fraud that resulted in another permanent injunction, this time entered by the District Court for the Northern District of Georgia, *SEC v. Mikula*, Case No. 1:08-cv-03097-BBM, ECF No. 95 (N.D. Ga. Sept. 24, 2009).

16.    **Christian Fernandez a/k/a Christian Crockwell** is a Mexican citizen residing in Georgia.  Fernandez controls the entities, including Nucleo de Negocios Dialin SA DE CV and Bench International LLC, through which the Defendant issuers funneled payments to Mikula in exchange for his promotion of their securities offerings.

17.    **Amit Raj Beri a/k/a Raj Beri** is an Australian national residing in Florida.  He moved to the United States in 2018 and founded Elegance, where he was the chief executive officer ("CEO").  Beri was listed as the chief financial officer ("CFO") in Elegance's filings with the Commission.

18.    **Sway Energy Corporation f/k/a Elegance Brands, Inc.** is a beverage company incorporated in Delaware with its principal place of business in Los Angeles, California.  In January 2022, Elegance changed its name to Sway Energy Corporation.

19.    **Avtar Singh Dhillon** is a Canadian citizen residing in California.  Dhillon co-founded Emerald Health and served as president and chairman of its board until 2019.  During the conduct described below, Dhillon served as a corporate finance consultant for the company and participated in meetings of the board of directors of Emerald Health as a board observer.  The Commission charged Dhillon in 2021 for his role in large-scale international microcap fraud schemes.  *SEC v. Sharp, et al.*, Case No. 1:21-cv-11276-WGY, ECF No. 1 (D. Mass. Aug. 5, 2021),

5

ECF No. 1.  He was also criminally charged for his involvement in those schemes. *United States v. Dhillon*, 1:21-mj-07174-JCB, ECF No. 3 (D. Mass Aug. 3, 2021).

20.   **Emerald Health Pharmaceuticals Inc.** is a biopharmaceutical company incorporated in Delaware with its principal place of business in San Diego, California.

21.   **James M. DeMesa** is a resident of Florida and was the president and CEO of Emerald Health during the conduct described below.

## RELATED ENTITIES AND INDIVIDUALS

22.   **Palm Beach Research Group** is operated by Common Sense Publishing, LLC, a subsidiary of Market Wise, Inc., a U.S. public company.  Palm Beach Research Group publishes Palm Beach Venture, a subscription-based newsletter that focuses on opportunities for investors to invest in securities offered under Reg A.  Mikula was one of two attributed authors of the Palm Beach Venture newsletter.

23.   **Hightimes Holding Corporation** ("Hightimes") is a Delaware corporation with its principal place of business in Los Angeles, California. Hightimes focuses on Cannabis related publications and platforms.  Hightimes received qualifications from the Commission to conduct Reg A offerings in March and July 2018.  Hightimes was promoted by Palm Beach Venture between April 2020 and March 2021.

24.   **Cloudastructure, Inc.** ("Cloudastructure") is a technology company incorporated in Delaware with its principal place of business in Miami, Florida. Cloudastructure received qualifications from the Commission to conduct Reg A offerings in July 2020, May 2021, and May 2022.  Cloudastructure was promoted by Palm Beach Venture between September 2020 and May 2021.

## THE ALLEGATIONS

**A.   The Fraudulent Promotional Scheme**

25.   Between at least 2019 through 2021, Mikula promoted at least four Reg

6

A issuers through the Palm Beach Venture newsletter, which falsely represented that his recommendation was based on his "own analysis" and that he did not receive compensation for "bringing this deal to you [the investor]."

26.     In fact, Mikula promoted the issuers in exchange for compensation that Mikula concealed from investors.

27.     As described below, Mikula typically introduced a middleman to the issuer that Palm Beach Venture planned to promote.  The middleman would then negotiate consulting or advisory agreements with the Reg A issuer with the understanding that the middleman would share a portion of the proceeds with Mikula. The agreements contained a generic description of services that the middleman would provide to the issuer, but in reality there was no expectation that the services would be provided; the agreement instead served the purpose of disguising compensation in exchange for the promotion.

28.     The payments to the consultants were typically tied to a percentage of investor proceeds from the Palm Beach Venture promotion.  The middlemen often submitted fake invoices to the issuers for services that were not performed.  Upon receipt of the payments from the issuer, the middlemen would retain a share of the compensation for their efforts, and funnel the remaining monies through accounts controlled by Fernandez—many of which were maintained offshore—for the benefit of Mikula.

**B.     The Elegance Promotion**

29.     The Commission qualified Elegance to conduct a Reg A offering in December 2018.

30.     Between December 2018 and August 2019, Elegance raised less than $1 million.

31.     In August 2019, Beri was introduced to Mikula and began discussing possible promotion of Elegance by Palm Beach Venture.

32.     In August 2019, at the request of Mikula in anticipation of a promotion

by Palm Beach Venture, Elegance and Beri made changes to the terms of Elegance's offering, including increasing the number of securities outstanding and adding warrants.

33.     For the Reg A exemption to remain available, these changes could only be accomplished through a new offering statement or post-qualification amendment qualified by the Commission.  Elegance did not prepare a new offering statement, nor did it obtain Commission approval for a post-qualification amendment.

34.     No other registration exemptions were available for Elegance's sale of the securities after August 2019.  Thus, the securities that Elegance sold after August 2019 were not registered and were not subject to any valid registration exemptions.

35.     At Mikula's urging, and in order to "facilitate" the promotion, Elegance agreed to engage Individual 1, an associate of Mikula's, and pay him 3% of investor funds raised through the promotion and provide him with 8.9 million shares of Elegance's stock, which amounted to 10% of the company's outstanding stock.

36.     Individual 1 joined Elegance's board as a non-executive chairman, but provided no other services to Elegance.

37.     In September and October 2019, Mikula and Beri corresponded frequently concerning the content of the upcoming promotional article on Elegance.

38.     On or about October 7, 2019, Mikula emailed Beri: "Final issue that subscribers will see attached... Let the games begin…" (Ellipses original.)

39.     Mikula attached a Palm Beach Venture newsletter containing a 23-page article promoting the Elegance Reg A offering, entitled "We're Buying the Next 'Best Performing Stock of the Century' for 50 Cents."

40.     Though nominally co-authored with the editor of Palm Beach Venture, Mikula, in fact, was the article's author.

41.     The article contained a number of false and misleading statements, including:

(a)     That Gorilla Hemp, a product that Elegance was in the early stages of

formulating, was "poised to ship to stores";

(b) That Gorilla Hemp was retailing for $3.95 a can;

(c) That Gorilla Hemp could yield Elegance a 2,630% price increase;

(d) That Elegance had distribution agreements in place for Gorilla Hemp with the largest adult beverage distributer in the United States; and

(e) That Elegance's share price was projected to increase by 9,900% in five years.

42. Elegance and Beri either provided false and misleading information to Mikula, or knew it was included in the article and never corrected it.

43. In addition to the false and misleading information described above, Mikula's promotional article, under the heading "How to Invest in Elegance Brands," provided contact information, including a website link, a phone number, and an email address where investors would "have the option to invest in Elegance by check, ACH, credit card, wire transfer, or through an IRA."

44. The article advised, "if you'd like to act, do so quickly. With the amount of anticipated demand, this deal won't be available long."

45. The article included this "Important Note":

> Neither the Palm Beach Research Group nor its affiliates receive compensation for bringing this deal to you. As publishers of financial information, we make general recommendations based on our own analysis.

46. Another version of the article released in January 2020 included that same "Important Note," as well as a disclaimer stating that "Palm Beach Research Group writers and publications do not take compensation in any form for covering those securities or commodities."

47. In fact, Mikula received from Elegance more than $80,000 in entertainment, including meals, nightclubs, and first class airfare, in exchange for his promotion of Elegance.

48.    In late 2019 and early 2020, to ensure the success of the Palm Beach Venture promotion, Elegance and Beri made a number of misstatements and material omissions of fact in its Commission filings, press releases, and other communications with prospective investors, including:

(a)    Falsely representing that Elegance was conducting an offering pursuant to a valid Reg A exemption;

(b)    Misrepresenting that $530,000 of investor funds and 8.9 million shares of Elegance stock were provided to Individual 1 in exchange for "marketing" and "consulting services," and omitting that they were provided in exchange for the promotion;

(c)    Failing to disclose that Elegance used more than $80,000 in investor funds to entertain Mikula and his associates in exchange for the promotion; and

(d)    Failing to include in its related party disclosures a share purchase agreement between Elegance and an entity owned by Beri and a payment of $1.7 million to Beri in December 2019 in connection with that agreement.

49.    Elegance and Beri engaged in a scheme to defraud investors by making the misstatements and omissions above and by engaging in related manipulative acts to raise funds through the Palm Beach promotion.  For example, Elegance and Beri:

(a)    Represented Palm Beach to be an "independent" third party;

(b)    Directly provided Mikula with false information that was used in the Palm Beach Venture articles; and

(c)    Circulated the article containing the falsities to investors, and directed its call center to use the article containing false information with prospective investors.

50.    Palm Beach Venture promoted Elegance between October 2019 and February 2020.

51.    During the promotion, Elegance raised approximately $20 million in investor funds, of which Elegance paid $530,000 to Individual 1.

52.     The securities that Elegance sold during the promotion were not registered, and were not subject to any valid registration exemption.

**C.     The Emerald Health Promotion**

53.     Founded in 2017, Emerald Health is a biopharmaceutical company focused on developing cannabinoid-derived drug products to treat autoimmune and neurodegenerative diseases.

54.     From 2020 through 2021, Emerald Health and members of its leadership participated in a fraudulent promotional scheme, paying undisclosed compensation for Mikula's recommendation in the Palm Beach Venture newsletter.

55.     The scheme began in 2019 when Emerald Health contacted Palm Beach Venture about the possibility of the newsletter featuring Emerald Health.

56.     On or about October 9, 2019, Mikula met DeMesa, Emerald Health's president and CEO, at a conference and introduced DeMesa to Beri.

57.     In November 2019, DeMesa, Dhillon, and others from Emerald Health met Mikula and Beri for lunch, at which Beri was introduced to Dhillon.

58.     In early 2020, Dhillon, who was the co-founder, former president and chairman of the board, and corporate finance consultant for Emerald Health, worked with Beri on a plan to have Emerald Health secretly pay Mikula to tout Emerald Health's Reg A offering through Palm Beach Venture.

59.     Regarding the proposed Emerald Health promotional scheme, Beri and Mikula exchanged the following text messages on or about January 14, 2020:

| | |
|---|---|
| Beri: | $200k cash and 2,000,000 shares |
| | And we can go halves on both. |
| | Once I get shares I can transfer to your Vegas company |
| Mikula: | We'd seek to publish on Monday March 9 |
| | So a week late but our r[e]adars wouldn't mind if the story is good enough |
| Beri: | Ok great 🖱 |

11

Don't lock it in

Let me get us our $$ and shares first

Mikula:       Sounds good 🐰

60.     On the same day, in a WhatsApp exchange with Dhillon, Beri wrote, "I spoke with William at 1 pm and I can guarantee some things if you can look after him, which I told him you can. Want to speak to you before I lock it in."

61.     Dhillon understood that Beri was referring to compensating Mikula for his promotion of Emerald Health.

62.     Based on this plan, Emerald Health would covertly transfer funds to Mikula by engaging Beri's brother to ostensibly provide consulting services for the company.

63.     In turn, Beri's brother would funnel a portion of his consulting fees to Mikula, and keep a portion for brokering this fraudulent deal.

64.     After agreeing to this scheme, Dhillon urged DeMesa to enter into sham consulting agreements with Beri and Beri's brother (an Australian resident) to procure Mikula's promotion.

65.     DeMesa initially had reservations about entering into these consulting agreements because he was "uncomfortable" with the arrangement with Beri. DeMesa questioned whether Beri was engaging in "blackmail" and whether Mikula could lose his job if Emerald Health exposed the terms of Beri's proposal.

66.     Between March 2020 and July 2020, DeMesa had several meetings with Beri to discuss prospective consulting agreements with Beri and Beri's brother.

67.     Through these meetings, DeMesa came to understand that Beri had a strong relationship with Mikula and would be influential over the decision of whether Mikula would recommend Emerald Health through Palm Beach.

68.     DeMesa considered Palm Beach Venture's subscribers a promising source of the investor capital Emerald Health needed to pursue clinical studies, cover employee salaries, and satisfy other operational expenses.

69.     DeMesa understood that the company would be paying Beri to help influence Mikula to promote Emerald Health, and DeMesa knew, or was reckless in not knowing, that Mikula would receive compensation for promoting Emerald Health.

70.     By the end of July 2020, DeMesa, on behalf of Emerald Health, entered into sham consulting agreements with Beri and his brother, agreeing to pay Beri 6% of investor funds raised through Palm Beach's promotional efforts.

71.     DeMesa drafted the agreement with Beri's brother and negotiated the terms of the agreement with Beri.

72.     Emerald Health's written agreement with Beri failed to identify that his compensation was tied to Palm Beach's promotional efforts and that he would be receiving a percentage of the funds raised.

73.     In February and March, 2020, Mikula authored a Palm Beach Venture article titled "Curing Incurable Diseases and Giving Us Over 4,900% Potential Gains," which touted Emerald Health and was distributed to the newsletter's subscribers.

74.     The article concluded with a section "How to Invest in Emerald Health Pharmaceuticals" and provided contact information, including a phone number, email address, and website where subscribers could purchase Emerald Health stock as part of Emerald Health's Reg A offering.

75.     The article advised subscribers, "if you'd like to act, do so quickly."

76.     Finally, the article contained an "Important Note" falsely claiming that "[n]either the Palm Beach Research Group nor its affiliates receive compensation for bringing this deal to you."

77.     On or about March 2, 2020, Mikula shared his promotional article with Dhillon and DeMesa before it was circulated to prospective investors, and neither Dhillon nor DeMesa raised any issue with the false disclaimer.

78.     In late summer 2020, Mikula authored another Palm Beach Venture

article touting Emerald Health entitled "The Next Aspirin."

79.     This article also contained information for how subscribers could invest in the Emerald Health Reg A offering and also contained an "Important Note" that "[n]either the Palm Beach Research Group nor its affiliates receive compensation for bringing this deal to you."  In addition, an endnote stated, "Palm Beach Research Group writers and publications do not take compensation in any form for covering those securities or commodities."

80.     In fact, between June 2020 and May 2021, Emerald Health paid the Beris $1.7 million collectively ($1.6 million to Beri and $100,000 to his brother). The company also issued 100,000 shares of Emerald Health stock, valued at $600,000 at the time of issuance, to Beri's brother.

81.     Despite his substantial compensation, valued at $700,000, Beri's brother performed no consulting services for Emerald Health during the six months in which he was engaged as a consultant for the company.

82.     Fernandez was responsible for collecting Mikula's share of the monies from Emerald Health.  Fernandez submitted sham invoices to Beri for these amounts. The invoices contained false descriptions, such as "Consulting for Developing Agave Syrup Phase 2."

83.     Beri and his brother transferred approximately $700,000 of the funds they received from Emerald Health to Mikula and Fernandez, as their share of the payment for Mikula's promotional campaign.  Over $100,000 was paid directly to Mikula and Fernandez, and the balance was paid through entities controlled by Fernandez to entities controlled by Mikula.

84.     For example, between July 9, 2020, and September 9, 2020, in four transfers ranging in amounts from $9,996.08 to $ 49,996.12, Beri's brother paid $79,992.20 to Nucleo de Negocios Dialin SA DE CV, an entity controlled by Fernandez.

85.     On September 25, 2020, at Fernandez's request, Beri provided him with

$30,000 in cash.

86.     Between October 10, 2020, and February 11, 2021, in four separate transfers ranging in amounts from $2,500 to $70,000, Beri transferred $78,500 from Beri Holdings, LLC to Fernandez.

87.     Between November 9, 2020, and May 28, 2021, in six transfers ranging in amounts from $30,000 to $200,000, Beri transferred $607,500 to Nucleo de Negocios Dialin SA DE CV.

88.     It was Beri's understanding that the monies paid to Fernandez were for the benefit of Mikula.  Between September 15, 2020, and December 6, 2021, in 21 transfers ranging in amounts from $1,666.66 to $54,000, Fernandez transferred at least $155,000 to New Age Vending LLC, an entity controlled by Mikula.

89.     Moreover, in a quarterly update to its investors, Emerald Health highlighted that Palm Beach Venture recommended the company "as an attractive investment opportunity" without disclosing that this was a paid-for recommendation.

90.      DeMesa approved the quarterly update and directed that it be sent to investors and posted on the company's public website.

91.     Throughout 2020, Emerald Health filed offering circulars with the Commission that included, as exhibits, the agreements with Beri and his brother. These circulars misled investors about the true nature of these consulting agreements and failed to disclose that the company was paying for the Palm Beach Venture promotion.

92.     DeMesa knew, or was reckless in not knowing, that the offering circulars and its exhibits failed to disclose that Beri's agreement was linked to Palm Beach Venture's efforts and that Beri was receiving 6% of funds raised from Palm Beach Venture subscribers.  Nevertheless, he prepared, reviewed, approved, and signed the filings.

93.     Emerald Health raised approximately $30 million from thousands of investors through Mikula's promotion.

### D. The Hightimes and Cloudastructure Promotions

94. Mikula also falsely stated that he did not receive compensation in connection with the promotion of at least two other Reg A issuers: Hightimes Holding between April 2020 and March 2021, and Cloudastructure between September 2020 and May 2021.

95. The Palm Beach Venture promotional articles on Hightimes and Cloudastructure again included the "Important Note" that "[n]either the Palm Beach Research Group nor its affiliates receive compensation for bringing this deal to you," and further stated that "Palm Beach Research Group writers and publications do not take compensation in any form for covering those securities or commodities."

96. In February 2020, Beri began negotiating a consulting agreement with Hightimes, representing that he would facilitate a promotion by Palm Beach Venture if Hightimes would pay him a percentage of investor funds raised through the promotion.

97. Beri coordinated with Mikula and agreed that he would share a portion of any funds received from Hightimes with Mikula.

98. Hightimes ultimately entered into an agreement to pay Entity 1, a Canadian entity controlled by Individual 2, 5% of the funds raised through the Palm Beach promotion.

99. Beri, Individual 2, Fernandez, and Mikula agreed that they would all receive a share of monies that Entity 1 received from Hightimes.

100. The purpose of using a Canadian entity and offshore account was to conceal that payments from Hightimes would go to Mikula.

101. Beri submitted sham invoices to Individual 2 for his share of the payments from Hightimes. Hightimes paid at least $150,000 to Entity 1, which was then disbursed to Individual 2, Fernandez, Beri, and Mikula.

102. In February 2020, Beri began negotiating a consulting agreement with Cloudastructure, informing Cloudastructure's CEO that Palm Beach Venture would

promote the company if Cloudastructure paid Beri a percentage of investor funds raised.

103.   Beri entered into these negotiations with the intent to share half of any amounts received from Cloudastructure with Mikula.

104.   Beri's negotiations were not successful, and Mikula subsequently introduced Fernandez to Cloudastructure.

105.   In September 2020, Cloudastructure entered into a consulting agreement with Entity 2, a Canadian entity.

106.   The consulting agreement provided that Entity 2 would receive certain fees based on the amounts raised from the Palm Beach promotion.

107.   Fernandez negotiated the agreement on behalf of Entity 2 and submitted invoices for Entity 2's agreed-upon share of investor proceeds raised through the Palm Beach Venture promotion.

108.   Cloudastructure ultimately paid Entity 2 $650,000, which was distributed at least in part to entities controlled by Mikula and Fernandez.

## FIRST CLAIM FOR RELIEF

### Fraud in Connection with the Purchase or Sale of Securities

### Violations of Section 10(b) of the Exchange Act and Rule 10b-5(a) and (c)

### (against all Defendants)

109.   The SEC realleges and incorporates by reference paragraphs 1 through 108 above.

110.   Mikula, Beri, and Elegance carried out a scheme to defraud, through the combination of their deceptive statements and actions concerning the Elegance offering. Throughout the promotional campaign, defendants concealed the compensation paid to Mikula, in the form of entertainment expenses, in exchange for Mikula's promotion of the Elegance offering.

111.   Mikula, Fernandez, Beri, Dhillon, Emerald Health, and DeMesa carried out a scheme to defraud, through the combination of their deceptive statements and

actions concerning the Emerald Health offering. Throughout the promotional campaigns, defendants concealed the compensation paid to Mikula, through Fernandez and/or Beri and others in exchange for Mikula's promotion of the Emerald Health offering.

112.   Mikula, Fernandez, and Beri carried out a scheme to defraud, through the combination of their deceptive statements and actions concerning the Hightimes offering. Throughout the promotional campaign, defendants concealed the compensation paid to Mikula, through Fernandez, Beri, and others, in exchange for Mikula's promotion of the Hightimes offering.

113.   Mikula and Fernandez carried out a scheme to defraud, through the combination of their deceptive statements and actions concerning the Cloudastructure offering. Throughout the promotional campaign, defendants concealed the compensation paid to Mikula, through Fernandez, in exchange for Mikula's promotion of the Cloudastructure offering.

114.   By engaging in the conduct described above, Mikula, Fernandez, Beri, Elegance, Dhillon, Emerald Health, and DeMesa and each of them, directly or indirectly, in connection with the purchase or sale of a security, and by the use of means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange:  (a) employed devices, schemes, or artifices to defraud; and (b) engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

115.   Mikula, Fernandez, Beri, Elegance, Dhillon, Emerald Health, and DeMesa, with scienter, employed devices, schemes, and artifices to defraud; and engaged in acts, practices, or courses of conduct that operated as a fraud on the investing public by the conduct described in detail above.

116.   By engaging in the conduct described above, Mikula, Fernandez, Beri, Elegance, Dhillon, Emerald Health, and DeMesa violated, and unless restrained and enjoined will continue to violate, Section 10(b) of the Exchange Act, 15 U.S.C.

§ 78j(b), and Rules 10b-5(a) and 10b-5(c) thereunder, 17 C.F.R. §§ 240.10b-5(a) and 240.10b-5(c).

## SECOND CLAIM FOR RELIEF

**Fraud in Connection with the Purchase or Sale of Securities**

**Violations of Section 10(b) of the Exchange Act and Rule 10b-5(b)**

**(against Mikula, Beri, Elegance, Emerald Health, and DeMesa)**

117. The SEC realleges and incorporates by reference paragraphs 1 through 108 above.

118. Mikula, Beri, and Elegance made materially false and misleading statements concerning Mikula's promotion of the Elegance offering.

119. Mikula, Emerald Health, and DeMesa made materially false and misleading statements concerning Mikula's promotion of the Emerald Health offering.

120. Beri and Elegance, in filings with the Commission, misrepresented that the payments to Individual 1 were for Mikula's promotion of Elegance and they falsely informed investors that they were qualified to engage in a Reg A offering.  In addition, Beri and Elegance also failed to disclose that investor funds would be used to pay for Mikula's promotion and failed to disclose a related party transaction and $1.7 million payment to Beri. In addition, Elegance and Beri either provided false and misleading information to Mikula for inclusion in promotional articles to investors, and knew false and misleading information was included in those articles and never corrected it.

121. Beri, as CEO of Elegance, controlled the content of Elegance's filings with the Commission and thus exercised ultimate authority over the statements contained in the filings.

122. Similarly, Emerald Health and DeMesa likewise failed to disclose that (1) Emerald Health paid for Mikula's promotion of Emerald Health, and (2) investor funds would be used to pay for Mikula's promotion.  In addition, Emerald Health and

DeMesa made material misrepresentations in offering circulars and a quarterly investor update, falsely implying that Beri and his brother were providing legitimate consulting services to Emerald Health and that the recommendation by Mikula in the Palm Beach Venture newsletter was an independent and objective third-party recommendation.

123.   DeMesa, as Emerald Health's president and CEO, controlled and approved the content and exercised ultimate authority over the statements in the offering circulars and the quarterly investor update.

124.   Mikula knew, or was reckless in not knowing, that the promotional articles he authored for the Elegance, Emerald Health, Hightimes, and Cloudastructure promotions represented to Palm Beach Venture subscribers he did not receive compensation from the issuers for the articles.

125.   By engaging in the conduct described above, Mikula, Beri, Elegance, Emerald Health, and DeMesa, and each of them, directly or indirectly, in connection with the purchase or sale of a security, and by the use of means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange, made untrue statements of a material fact or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

126.   Mikula, Beri, Elegance, Emerald Health, and DeMesa, with scienter, made untrue statements of a material fact or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, by the conduct described in detail above.

127.   By engaging in the conduct described above, Mikula, Beri, Elegance, Emerald Health, and DeMesa violated, and unless restrained and enjoined will continue to violate, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5(b) thereunder, 17 C.F.R. § 240.10b-5(b).

### THIRD CLAIM FOR RELIEF

**Fraud in the Offer or Sale of Securities**

**Violations of Sections 17(a)(1) and (3) of the Securities Act**

**(against all Defendants)**

128.  The SEC realleges and incorporates by reference paragraphs 1 through 108 above.

129.  Mikula, Beri, and Elegance carried out a scheme to defraud, through the combination of their deceptive statements and actions concerning the Elegance offering. Throughout the promotional campaigns, defendants concealed the compensation paid to Mikula, through and others in exchange for Mikula's promotion of the Elegance offering.

130.  Mikula, Fernandez, Beri, Dhillon, Emerald Health, and DeMesa carried out a scheme to defraud, through the combination of their deceptive statements and actions concerning the Emerald Health offering. Throughout the promotional campaigns, defendants concealed the compensation paid to Mikula, through Fernandez and/or Beri and others in exchange for Mikula's promotion of the Emerald Health offering.

131.  Mikula, Fernandez, and Beri carried out a scheme to defraud, through the combination of their deceptive statements and actions concerning the Hightimes offering. Throughout the promotional campaign, defendants concealed the compensation paid to Mikula, through Fernandez, Beri, and others, in exchange for Mikula's promotion of the Hightimes offering.

132.  Mikula and Fernandez carried out a scheme to defraud, through the combination of their deceptive statements and actions concerning the Cloudastructure offering. Throughout the promotional campaign, defendants concealed the compensation paid to Mikula, through Fernandez, in exchange for Mikula's promotion of the Cloudastructure offering.

133.  By engaging in the conduct described above, Mikula, Fernandez, Beri,

Elegance, Dhillon, Emerald Health, and DeMesa, and each of them, directly or indirectly, in the offer or sale of securities, and by the use of means or instruments of transportation or communication in interstate commerce or by use of the mails directly or indirectly:  (a) employed devices, schemes, or artifices to defraud; and (b) engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

134.   Mikula, Fernandez, Beri, Elegance, Dhillon, Emerald Health, and DeMesa, with scienter, employed devices, schemes, and artifices to defraud; and, with scienter or negligence, engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

135.   By engaging in the conduct described above, Mikula, Fernandez, Beri, Elegance, Dhillon, Emerald Health, and DeMesa violated, and unless restrained and enjoined will continue to violate, Sections 17(a)(1) and 17(a)(3) of the Securities Act, 15 U.S.C. §§ 77q(a)(1) and 77q(a)(3).

<u>**FOURTH CLAIM FOR RELIEF**</u>

**Fraud in the Offer or Sale of Securities**

**Violations of Section 17(a)(2) of the Securities Act**

**(against Mikula, Beri, Elegance, Emerald Health, and DeMesa)**

136.   The SEC realleges and incorporates by reference paragraphs 1 through 108 above.

137.   Mikula, Beri, Elegance, Emerald Health, and DeMesa obtained money or property by means of materially false and misleading statements concerning Mikula's promotion of the Elegance and Emerald Health offerings.  Specifically, Beri and Elegance failed to disclose that (1) payments to Individual 1 were for Mikula's promotion of Elegance, and (2) investor funds would be used to pay for Mikula's promotion.  In addition, Elegance and Beri either provided false and misleading information to Mikula for inclusion in promotional articles to investors, and knew false and misleading information was included in those articles and never corrected it.

22

Emerald Health and DeMesa likewise failed to disclose that (1) Emerald Health paid for Mikula's promotion of Emerald Health, and (2) investor funds would be used to pay for Mikula's promotion. Mikula failed to disclose that he was received compensation for his articles promoting the Elegance and Emerald Health offerings, contrary to the representations in the articles that he received no compensation from the issuers.

138.   By failing to disclose that he received compensation from the issuers for his articles, Mikula obtained money or property by means of materially false and misleading statements concerning his promotion of the Hightimes and Cloudastructure offerings.

139.   By engaging in the conduct described above, Mikula, Beri, Elegance, Emerald Health, and DeMesa, and each of them, directly or indirectly, in the offer or sale of securities, and by the use of means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly obtained money or property by means of untrue statements of a material fact or by omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

140.   Mikula, Beri, Elegance, Emerald Health, and DeMesa, with scienter or negligence, obtained money or property by means of untrue statements of a material fact or by omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

141.   By engaging in the conduct described above, Mikula, Beri, Elegance, Emerald Health, and DeMesa violated, and unless restrained and enjoined will continue to violate, Section 17(a)(2) of the Securities Act, 15 U.S.C. § 77q(a)(2).

## **FIFTH CLAIM FOR RELIEF**

**Nondisclosure of Compensation for Touting Stock**

**Violations of Section 17(b) of the Securities Act**

**(against Mikula)**

142.  The SEC realleges and incorporates by reference paragraphs 1 through 108 above.

143.  Defendant Mikula violated the anti-touting provisions by concealing the compensation he received for his promotions of Elegance, Emerald Health, Hightimes, and Cloudastructure.  Mikula promoted these issuers' stock through articles he authored in the Palm Beach Venture newsletter without disclosing that Mikula received compensation from the issuers.  Instead, each article falsely stated, "[n]either the Palm Beach Research Group nor its affiliates receives compensation for bringing this deal to you."

144.  By engaging in the conduct described above, Mikula, by the use of means or instruments of transportation or communication in interstate commerce or by the use of the mails, published, gave publicity to, or circulated notices, circulars, advertisements, newspapers, articles, letters, investment services, or communications which, though not purporting to offer a security for sale, described such security for a consideration received or to be received, directly or indirectly, from an issuer, underwriter, or dealer, without fully disclosing the receipt, whether past or prospective, of such consideration and the amount thereof.

145.  By engaging in the conduct described above, Mikula violated, and unless restrained and enjoined will continue to violate, Section 17(b) of the Securities Act, 15 U.S.C. § 77q(b).

## SIXTH CLAIM FOR RELIEF

### Aiding and Abetting

### Violations of Section 17(b) of the Securities Act

### (against Fernandez, Beri, and Dhillon)

146.    The SEC realleges and incorporates by reference paragraphs 1 through 108 above.

147.    Fernandez, Beri, and Dhillon knowingly or recklessly provided substantial assistance to Mikula's violations of Section 17(b) of the Securities Act, 15 U.S.C. § 77q(b).

148.    Beri substantially assisted Mikula's violations when, acting in conjunction with Mikula, he entered into an agreement with Emerald Health to receive payments for the promotion with the knowledge that he would share a portion of these payments with Mikula.

149.    Dhillon substantially assisted Mikula's violations when he facilitated the agreement between Beri's brother and Emerald Health with the full understanding that Mikula would receive a portion of the compensation.  Beri and Dhillon understood that Mikula had an obligation to disclose compensation that he received in exchange for promotion, and knew that the purpose of Beri acting as a consultant was to conceal the payments and circumvent these obligations.

150.    Fernandez substantially assisted Mikula's violations when he submitted sham invoices to Beri for Mikula's share of the issuer payments, and both Beri and Fernandez understood that Fernandez had not performed the services outlined in the invoices.

151.    In addition, Fernandez substantially assisted Mikula's violations when he assisted in negotiating an agreement with Cloudastructure for a portion of proceeds from the promotion, submitted invoices directly to Cloudastructure for the proceeds, and then funneled monies to accounts controlled by Mikula.

152.    By engaging in the conduct described above, Fernandez, Beri, and

Dhillon aided and abetted, and unless restrained and enjoined will continue to aid and abet, Mikula's violations of Section 17(b) of the Securities Act, 15 U.S.C. § 77q(b).

### SEVENTH CLAIM FOR RELIEF

**Unregistered Offer and Sale of Securities**

**Violations of Sections 5(a) and 5(c) of the Securities Act**

**(against Elegance and Beri)**

153.   The SEC realleges and incorporates by reference paragraphs 1 through 108 above.

154.   As set forth above, Elegance lost its Reg A exemption in August 2019, when it, through Beri, made fundamental changes to the terms of the offering by increasing the number of securities outstanding, decreasing the price per security, and adding warrants.  Elegance and Beri offered and sold approximately $20 million in Elegance securities to investors in interstate commerce, without filing a registration statement with the SEC, and without qualifying for any exemption from registration.

155.   By engaging in the conduct described above, Elegance and Beri, and each of them, directly or indirectly, singly and in concert with others, has made use of the means or instruments of transportation or communication in interstate commerce, or of the mails, to offer to sell or to sell securities, or carried or caused to be carried through the mails or in interstate commerce, by means or instruments of transportation, securities for the purpose of sale or for delivery after sale, when no registration statement had been filed or was in effect as to such securities, and when no exemption from registration was applicable.

156.   By engaging in the conduct described above, Elegance and Beri have violated, and unless restrained and enjoined, are reasonably likely to continue to violate, Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. §§ 77e(a) & 77e(c).

### PRAYER FOR RELIEF

WHEREFORE, the SEC respectfully requests that the Court:

## I.

Issue findings of fact and conclusions of law that defendants committed the alleged violations.

## II.

Issue judgments, in forms consistent with Rule 65(d) of the Federal Rules of Civil Procedure, permanently enjoining Mikula, Fernandez, Beri, Elegance, Dhillon, Emerald Health, and DeMesa, and their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with any of them, who receive actual notice of the judgment by personal service or otherwise, and each of them, from violating Section 10(b) of the Exchange Act, 15 U.S.C. §§ 78j(b) and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

## III.

Issue judgments, in forms consistent with Rule 65(d) of the Federal Rules of Civil Procedure, permanently enjoining Mikula, Fernandez, Beri, Elegance, Dhillon, Emerald Health, and DeMesa, and their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with any of them, who receive actual notice of the judgment by personal service or otherwise, and each of them, from violating Section 17(a) of the Securities Act, 15 U.S.C. §77q(a).

## IV.

Issue judgments, in forms consistent with Rule 65(d) of the Federal Rules of Civil Procedure, permanently enjoining Mikula, Fernandez, Beri, and Dhillon, and their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with any of them, who receive actual notice of the judgment by personal service or otherwise, and each of them, from violating, directly or indirectly, Section 17(b) of the Securities Act, 15 U.S.C. §77q(b).

## V.

Issue judgments, in forms consistent with Rule 65(d) of the Federal Rules of Civil Procedure, permanently enjoining Beri and Elegance, and their officers, agents,

servants, employees, and attorneys, and those persons in active concert or participation with any of them, who receive actual notice of the judgment by personal service or otherwise, and each of them, from violating Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. §§ 77e(a) & 77e(c).

## VI.

Order Mikula, Fernandez, and Beri to disgorge all funds received from their illegal conduct, together with prejudgment interest thereon, pursuant to Exchange Act Sections 21(d)(5) and 21(d)(7), 15 U.S.C. §§ 78u(d)(5) & 78u(d)(7).

## VII.

Order Mikula, Fernandez, Beri, Elegance, Emerald Health, and DeMesa to pay civil penalties under Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3).

## VIII.

Enter an order against Beri, Dhillon, and DeMesa, pursuant to Section 20(e) of the Securities Act, 15 U.S.C. § 77t(e), and Sections 2l(d)(2) of the Exchange Act, 15 U.S.C. § 78u(d)(2), prohibiting each of them from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act, 15 U.S.C. § 78ℓ or that is required to file reports pursuant to Section 15(d) of the Exchange Act, 15 U.S.C. § 78o(d).

## IX.

Enter an order permanently enjoining Mikula and Fernandez from directly or indirectly, including but not limited to, through any entity they own or control, assisting with, facilitating, or receiving compensation in any form for a Promotional Campaign related to any security.

Enter an order permanently enjoining Beri from directly or indirectly, participating in a paid promotional campaign, unless an experienced securities lawyer reviews the arrangement and affirms in writing that the arrangement is consistent with applicable U.S. securities laws and regulations.

'Promotional Campaign' means an effort, the goal of which is to generate interest in any security by, directly or indirectly, publishing, giving publicity to, or circulating any form of written communication, whether electronic or hard copy, which, though not purporting to offer a security for sale, describes such security.

## X.

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

## XI.

Grant such other and further relief as this Court may determine to be just and necessary.

Dated:  September 30, 2022

/s/ Charles E. Canter
Charles E. Canter
Sarah S. Nilson
Yolanda Ochoa
Attorneys for Plaintiff
Securities and Exchange Commission