# Exhibit 1



KAPLAN | MARINO

kaplanmarino.com

December 7, 2022

**Via Email Only**

Charles E. Canter
Sarah S Nilson
Yolanda Ochoa
US Securities and Exchange Commission
444 South Flower Street Suite 900
Los Angeles, CA 90071
canterc@sec.gov
nilsons@sec.gov
ochoay@sec.gov

Re:  *SEC v. Mikula, et al.*, 2:22-CV-07096-SB-PLA
     **Meet and Confer Regarding Motion to Dismiss**

Dear Counsel:

Thank you for your courtesy in agreeing to extend the time for our client, defendant Jonathan Mikula ("Defendant"), to move or otherwise respond to the complaint. We believe that the complaint, as drafted, contains issues the Court should address. Pursuant to Local Rule 7-3 and Judge Blumenthal's Standing Order, we would like to meet and confer with you by December 12, 2022 to see what we can resolve informally without needing the Court's assistance. Here are the grounds for a motion to dismiss that we would like to discuss.

1. <u>Failure to Plead Scienter for the Alleged Anti-Touting Conduct</u>. The complaint suffers from a failure to plead scienter in Count Five and the other counts that rely upon an anti-touting theory.[1] The key language in Section 17(b) that the Commission must prove is that the Defendant ***publish[ed]*** ... [an] article ...which, ..., describes such security ***for a consideration received or to be received***, directly or indirectly, ***from an issuer***. The

---

[1] The text of Section 17(b) provides: "It shall be unlawful for any person by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, to publish, give publicity to, or circulate any notice, circular, advertisement, newspaper, article, letter, investment service, or communication which, though not purporting to offer a security for sale, describes such security for a consideration received or to be received, directly or indirectly, from an issuer, underwriter, or dealer, without fully disclosing the receipt, whether past or prospective, of such consideration and the amount thereof." 15 U.S.C. § 77q(b).



Supreme Court and the Ninth Circuit have not ruled on the question of whether the Commission must plead and prove scienter.  Defendant concedes that Section 17(b) does not explicitly state an element of intent.  But in *Aaron v. SEC*, 446 U.S. 680 (1980), the Supreme Court read into Section 17(a)(1) the *implied* element of fraudulent intent. *See id.* at 695–96.  The Court should act similarly here and imply into the anti-touting allegations a requirement that the Commission plead scienter.  First, the wording of Section 17(b) provides that the Commission must prove that the defendant published a newsletter "for a consideration received" from the issuer.  This is another way of saying *quid pro quo*.  Section 17(b) is essentially a bribery statute that requires the Commission to plead and prove an illegal *quid pro quo*.  *See SEC v. Wall Street Pub. Institute*, 851 F.2d 365, 376 (D.C.Cir.1988).  The essential violation is whether the Commission can prove Defendant received compensation from the four issuers identified in the Complaint in exchange for an agreement between the issuers and Defendant that Defendant would write articles that tout the issuers' securities.  If Defendant did not know that the monies he received came from the issuers, he did not commit the violation.  If Defendant did not write pieces in exchange for the monies paid by the issuers, he is not legally responsible for a Section 17(b) violation. The core conduct here is analogous to the federal bribery criminal statute where the Supreme Court implied a requirement that the government prove that the defendant must act "corruptly."  The Supreme Court in *United States v. Sun-Diamond Growers of California*, 526 U.S. 398, 404-05 (1999) held that "for bribery there must be a *quid pro quo*—a specific intent to give or receive something of value in exchange for an official act."  In that case, the Supreme Court was construing the federal bribery statute, 18 U.S.C. § 201.  For Section 17(b) to be construed in a constitutional manner, the Commission should be required to plead and prove that Defendant **corruptly** wrote a favorable article for a particular issuer as a quid pro quo for payments he knew were made by that same issuer.  As pled, the payments here come to Defendant via third persons and middlemen without any scienter pleaded.  To distinguish between illegal payments and legal monies received from third parties, the Court should require the Commission to prove that Defendant corruptly wrote articles in exchange for payments that he knew came from the issuers, essentially the *quid* for the *quo*.  The complaint does not allege such and should be dismissed, with leave to amend if the facts would support such allegations.

2. <u>Failure to Plead Fraud with Particularity Pursuant to Rule 9b</u>.  Federal Rule of Civil Procedure Section 9(b) and surrounding case law requires that a fraud case filed by the SEC must plead the fraud with particularly.  "Rule 9(b)'s heightened pleading requirements apply to allegations of securities fraud" and require the SEC to "set out the who, what, when, where and how of the alleged fraud…" as it applies to each defendant. *S.E.C. v. Kameli*, 373 F.Supp. 3d 1194, 1201 & 1204 (N.D. Ill. 2019) (citations omitted). The SEC must differentiate among the defendants to give each defendant fair notice of each person's alleged role and actions.  *Id.*  Rule 9(b) clearly applies to the Rule 10b-5 fraud claims in Counts One and Two and the offering fraud claims in Counts Three and

Canter Letter
December 7, 2022
Page 3



Four.  Rule 9(b) also applies to the anti-touting claim in Count Five because most circuits have "held that Rule 9(b) applies to claims under the Securities Act … if they 'sound in fraud,' even if a plaintiff need only allege negligence to state a claim." *S.E.C. v. RPM Int'l, Inc.*, 282 F. Supp. 3d 1, 12-13 (D.D.C. 2017) (citing in relevant part to *In Re Stac Elecs. Secs. Litig.*, 89 F.3d 1399, 1404-05 (9th Cir. 1996) (noting that the 9th Circuit adopted the majority rule that the particularity requirements apply to negligence when the claim sounds in fraud)).

While the complaint may be detailed as to the other defendants, it is lacking as to the "when," by "whom," "how" and "where" for the compensation supposedly paid by the issuers to Defendant in exchange for favorable articles.  In paragraphs 5-7 and 27, the Commission alleges that four issuers paid middlemen who paid Defendant millions of dollars in compensation in exchange for promoting the four issuers' Reg A offerings. In paragraph 28, the Commission alleges that the payments were "typically" tied to a percentage of investor proceeds, that fake invoices for services not performed were utilized, and that the middlemen would retain a "share" of the proceeds while the remaining monies were funneled through accounts, including offshore accounts, controlled by Fernandez for the benefit of Defendant. These sweeping allegations as pled do not satisfy the requirements of Rule 9(b). For each of the four issuers, the facts as alleged are insufficiently pled.

Elegance: The Commission alleges that Defendant received $80,000 from Elegance in the form of entertainment, meals, nightclubs, and airfare in exchange for the promotion of Elegance.  The Commission mentions an Individual 1 but neither identifies the person or the relevance of that person. The Commission alleges that the promotion contained false and misleading statements but fails to identify the source of those statements. Later the Commission offers that Elegance and Beri provided Defendant with false information but fails to clarify what information that was.

Emerald Health: The Commission alleges that Emerald Health would covertly transfer funds to Defendant by engaging an unidentified person (a different defendant's brother) to provide consulting services, and in turn the "brother" would funnel money to Defendant.  The Commission does not identify the amount of the funds, dates of transfers, or any other details. The Commission also alleged that Fernandez transmitted money for the benefit of Defendant, but the only details provided pertain to payments made to Fernandez.  The closest that the allegations get to being detailed is that in 2020 and 2021, Fernandez transferred $155,000 to New Age Vending LLC, an entity controlled by Defendant.

Canter Letter
December 7, 2022
Page 4



The <u>Hightimes</u> and <u>Cloudastructure</u> allegations are even more vague. The Commission alleges that Beri agreed to pay Defendant a share of the proceeds he received from Hightimes. Hightimes is alleged to have paid an unidentified Canadian entity (Entity 1) controlled by an unidentified individual (Individual 2) and Defendant, among others, including the unidentified Individual 2, "at least" $150,000. The "who," meaning the identity of Entity 1 and Individual 2 is not disclosed. The "when" is not disclosed. The "where" is not disclosed. The "why" and the "how" are not disclosed. The Commission states that Cloudastructure paid an unknown Canadian entity (Entity 2) $650,000 of which "at least part" was paid to Defendant. This allegation, like Hightimes, is completely deficient regarding the "who", "what", "when", "where", and the "why" some undisclosed amount of money was paid to defendant.

Defendant cannot be expected to defend against a fraud case when the names of the persons and entities are not outlined in the complaint, and the dates, amounts and the identities of the alleged middlemen are omitted. With respect to Hightimes and Cloudastructure, a fraud is not even alleged. The complaint is lacking in specifics as required to identify the "when," by "whom," "how" and "where" for the compensation supposedly paid to Defendant allegedly in exchange for favorable articles.

3. <u>Lack of Venue in the Central District of California</u>. As you know, in securities actions, venue is proper "in any district where the defendant 'is found or is an inhabitant or transacts business,' or where 'any act or transaction constituting the violation occurred.'" *SEC v. Carroll*, 835 F. Supp. 2d 281, 284 (W.D. Ky. 2011). *See also Mariash v. Morrill*, 496 F.2d 1138, 1142 (2d Cir.1974). Defendant was neither found nor resides in the Central District of California. Furthermore, the complaint fails to allege facts that any act or transaction, or even just "an important step in the fraudulent scheme" occurred in the Central District of California. *Carroll*, 835 F. Supp. 2d at 284 (*citing Mariash v. Morrill*, 496 F.2d 1138, 1144 (2d Cir. 1974)) (*citing Hooper v. Mountain States Sec. Corp.*, 282 F. 2d 195, 204 (5th Cir. 1960); *Int'l Controls Corp. v. Vesco*, 490 F.2d 1334, 1347 (2d Cir. 1974)). The only connection we see in the complaint is that two of the issuers – Sway Energy and Hightimes – have their principal places of business in Los Angeles.

While venue may be proper in more than one district, the Central District of California certainly does not have "approximate equal plausibility" to the Southern District of Florida or the Northern District of Georgia where the majority of the defendants reside and from where it is plausible the acts or transactions "constituting an important step" towards the alleged violations occurred. *Leroy v. Great Western United Corp.,* 443 U.S. 173, 185 (1979); *Carroll*, 835 F. Supp. 2d at 284. Of the individual defendants in this matter, four out of the five reside not only out of district, but out of state – both

Canter Letter
December 7, 2022
Page 5



Defendant and potentially Fernandez as well reside in Georgia and both Beri and DeMesa reside in Florida. Dhillon, the fifth defendant resides somewhere in California according to the complaint.[2] And of the two defendant corporations, only one, Sway Energy, has its principal place of business in the Central District of California (although neither are incorporated in California). Likewise, two of the three related entities in the complaint have principal places of business in the Southern District of Florida and only one, Hightimes, has its principal place of business in Los Angeles (although it, too, is incorporated in Delaware). There is also no indication in the complaint that any act or transaction even just "constituting an important step" occurred in the Central District of California. *Carroll*, 835 F. Supp. 2d at 284. This matter should therefore also be dismissed or transferred for improper venue.

4. <u>Forum Non Conveniens</u>. Pursuant to 28 USC § 1404(a), "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district [] where it might have been brought[.]" "[A] district court considering a § 1404(a) motion (or a forum non conveniens motion) must evaluate both the convenience of the parties" including "'relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; … and all other practical problems that make trial of a case easy, expeditious and inexpensive'" and "various public interest considerations." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 63, 63, n. 6 (2013) (*citing Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241, n. 6 (1981)). Here, the majority of the defendants reside in either the Southern District of Florida or the Northern District of Georgia. Two of the three related entities are also located in the Southern District of Florida and most of the witnesses will be located in one of those two districts. The acts or transactions constituting the alleged violations would have occurred in either or both of these two districts. Flying defendants and witnesses across the country in addition to accessing sources of proof and evidence will be exceedingly difficult in the current forum. Defendant also does not have ties to the Central District of California, which hamstrings his ability to put on a defense. Since either the Southern District of Florida or the Northern District of Georgia are available and better suited forums, this matter should be transferred to one of those two districts.

//

//

//

---

[2] Although the Complaint does not specify, it is likely that defendant resides in the Southern District of California as he is the CEO for the defendant corporation Emerald Health with a principal place of business in San Diego.

Canter Letter
December 7, 2022
Page 6



    Please advise of your availability on December 12, 2022, or as soon thereafter as is convenient, to meet with us and confer on these issues.

        Sincerely,

        KAPLAN MARINO, P.C.

          /s/

        NINA MARINO
        JENNIFER LIESER